# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Taylor Ladouceur
993 West Main St.
Sugarcreek, OH 44681

    Plaintiff,

-vs.-

The J. M. Smucker Company
c/o Mark Smucker
1 Strawberry Lane,
Orrville, OH 44667

    Defendant.

CASE NO.: 5:23 CV 63

JUDGE: JUDGE LIOI

**COMPLAINT FOR RELIGIOUS DISCRIMINATION UNDER 42 U.S.C. § 2000e**, *et seq.*

**JURY DEMAND ENDORSED HEREON**

FILED
JAN 12 2023
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

For her Complaint against Defendant, The J. M. Smucker Company, Plaintiff Taylor Ladouceur states:

## INTRODUCTION

1. Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII") by failing to provide Plaintiff with required religious accommodation and by failing to engage in an interactive process to determine and provide reasonable accommodation.

2. This suit seeks to remedy Defendant's statutory violations and discrimination against Plaintiff who requested a religious accommodation from Defendant's mandate that employees receive the COVID-19 vaccine.

3. Rather than comply with its obligations under Title VII, Defendant threatened to terminate Plaintiff if she did not get vaccinated for COVID-19 and terminated Plaintiff for failure to do so.

4. Defendant's statutory violations, discrimination, and retaliation left Plaintiff with the choice of receiving the COVID-19 vaccine in violation of her sincerely held religious beliefs or losing her job.

1

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e. Venue is proper under 28 U.S.C. § 1391(b) because the events complained of occurred in this District and Division.

## PARTIES

6. Plaintiff Taylor Ladouceur lives in Sugarcreek, Ohio and worked as a Senior Financial Analyst in Corporate Accounting at The J. M. Smucker Company.

7. Defendant, The J.M. Smucker Company ("SMUCKER"), is an American marketer and manufacturer of jam, peanut butter, jelly, fruit syrups, beverages, shortening, ice cream toppings, and other food products in North America. Defendant is headquartered in Orrville, Ohio.

## FACTUAL ALLEGATIONS

8. Plaintiff worked at SMUCKER for over five (5) years with a hiring date of November 7, 2016.

9. During her employment at SMUCKER, Plaintiff was an employee in good standing and without exception received positive performance review ratings. On her most recent annual performance review around June of 2021, after working from home for more than a year, Plaintiff received a high mark of "exceeds expectations".

10. Plaintiff is a lifelong practicing Christian and has faithfully attended church since she was a child.

11. Plaintiff successfully worked from home during the pandemic beginning March 2020 and continuing through her termination effective December 16, 2021. During that time, she came into the office on only four occasions and that was to either pick up or return equipment or to move some items out of her office desk. She continued to successfully work from home until she was terminated because of the mandate effective December 16, 2021.

12. Upon information and belief, Defendant implemented a work from home ("WFH") policy for corporate employees beginning in March of 2020 and extended it several times. On August 16, 2021, CEO Mark Smucker extended WFH for employees whose "roles allow" through the end of 2021. Ultimately it was extended to "no sooner" than the core week of January 24, 2022. In the September 21, 2021 FAQ, a 25% in-person requirement was mentioned but not enforced until the week of January 24, 2022. Although January 24, 2022 served as the formal return to work date, Defendant allowed the unvaccinated to continue to work from home until mid-March of 2022.

### A. Defendant's Vaccine Mandate

13. On September 9, 2021, President Biden issued Executive Order 14042 (the "Order").[1]

14. The Order required that all contracts with the Federal Government, and those of subcontractors, include a clause requiring compliance with the Safer Federal Workforce Task Force (the "Task Force") guidance regarding Covid-19 safeguards.

15. Following issuance of the Order, Task Force guidance required Covid-19 vaccination.[2]

16. Task Force guidance called for federal contractor employees to receive a complete round of Covid-19 vaccinations by January 18, 2022, unless legally entitled to an accommodation for medical or religious reasons.[3]

---

[1] https://www.presidency.ucsb.edu/documents/executive-order-14042-ensuring-adequate-covid-safety-protocols-for-federal-contractors [last accessed 1/12/2023]

[2] https://www.saferfederalworkforce.gov/contractors/

[3] *Id.* at 5. This mandate was stayed on December 7, 2021, when the Southern District of Georgia enjoined the Order nation-wide for federal contractors (*See Georgia v. Biden*, 574 F.Supp.3d 1337 (S.D. Ga. 2021), *aff'd in part, vacated in part sub nom. Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022). In response to this nationwide injunction, Department of Defense guidance indicated on December 9, 2021 that it would not enforce the mandate on existing contracts and, on December 10, 2021, the Task Force updated its guidance stating that the government would not seek to enforce the clause implementing requirements of the Order where the place of performance identified in the contract is in the U.S. or an area subject to the injunction (*See "UPDATE TO ALERT DATED 12/7/21: Federal Court in Georgia Enjoins Enforcement of Federal Contractor/Subcontractor Vaccine Mandate Nationwide*," https://www.smithcurrie.com/publications/covid-19/alert-federal-court-in-georgia-enjoins-enforcement-of-federal-contractor-subcontractor-vaccine-mandate-nationwide/

17. Around the same time the Federal Government co-opted Occupational Health and Safety administration ("OSHA") to issue a rule requiring employers with over 100 employees to mandate Covid-19 injections for their workforce.[4]

18. On September 10, 2021, CEO Mark Smucker announced via email that all U.S. employees would be "asked and expected" to be fully vaccinated in the months ahead. Smucker stated, "While the immediate phase in front of us is a vaccine expectation, and not a mandate, we want to be clear that a mandate is on the horizon. This is necessary as we comply with federal requirements and act in support of our people and business." This was in addition to the indoor masking and social distancing protocol already in place at the Orrville corporate and certain other locations.

19. This announcement was soon followed by another email from Mark Smucker on September 21, 2021, that Defendant expected all U.S. salaried employees to be fully vaccinated by December 15, 2021. Defendant stated it would grant legally protected religious and medical exemptions. A link to a recorded Town Hall Meeting and an FAQ document accompanied the email. The meeting stressed that the vaccine expectation was because Defendant was a federal contractor.

20. On October 11, 2021, this expectation officially became a mandate for all U.S. salaried employees due to Defendant's status as a federal contractor. Smucker stated, "When we announced our vaccine *expectation* two weeks ago, it was our intent to take things at our own pace; to work together in partnership toward a vaccinated workplace. We knew at the time a mandate was almost certainly on the horizon based on forthcoming federal requirements, but the timeline was uncertain." Smucker further stated, "**This is no longer an expectation, but a requirement and**

---

[4] On November 12, 2021, the U.S. Fifth Circuit Court of Appeals reaffirmed the halt of the large employer vaccine mandate as part of a nation-wide stay, and OSHA temporarily suspended its enforcement. On December 17, 2021, the U.S. Sixth Circuit Court of Appeals lifted the nationwide ban on the mandate. Finally, on January 13, 2022, the U. S. Supreme Court blocked enforcement of the emergency vaccine mandate for businesses with 100 or more employees. OSHA formally withdrew the mandate on January 26, 2022 (See "Vaccine Mandate Litigation," https://law.georgia.gov/resources/vaccine-mandate-litigation).

**condition of employment. Employees who do not comply with our Mandatory Vaccination Policy will be separated from the Company Dec. 6, 2021, and will not be eligible for severance."** This mandate did not apply as a condition of employment to hourly manufacturing and distribution employees.

### B. Federal Law Prohibiting Religious Discrimination and Retaliation

21. Title VII requires employers to offer reasonable accommodation to a requested religious exemption absent demonstration of undue hardship on their business. Failure to do so is an unlawful employment practice. 29 C.F.R. § 1605.2 (b)(1) (Up to date as of December 28, 2022).[5]

22. "[T]he sincerity of an employee's stated religious belief is usually not in dispute and is 'generally presumed or easily established.'" *See "Section 12: Religious Discrimination"* § 12-1. A.2, EEOC (Updated January 15, 2021).[6]

23. Title VII prohibits Defendant from discriminating against employees based on religion. This "include[s] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's […] religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

24. In other words, "[a]n employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees but is not required to incur undue hardship." *Weber v. Roadway Express*, 199 F.3d 270, 273 (5th Cir. 2000).

25. Title VII also prohibits Defendant from retaliating against employees for engaging in protected activity. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014).

26. U.S. Equal Employment Opportunity Commission (EEOC) guidance on Title VII and the

---

[5] https://www.ecfr.gov/current/title-29/subtitle-B/chapter-XIV/part-1605/section-1605.2#1605.2-footnote-2
[6] https//www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftnref40

COVID-19 pandemic provides that employers should "thoroughly consider all possible reasonable accommodation." Telework is one example of reasonable accommodation to vaccination. *See "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws"* §§ K.1, K.2, K.12, EEOC (Updated July 12, 2022).[7]

27. Although Defendant let employees apply for a religious or medical disability exemption to Covid-19 vaccination, Plaintiff's request for religious exemption was treated differently and processed in a discriminatory manner.

### C. Defendant's Accommodation Request System

28. Defendant SMUCKER created a method for employees to request accommodation for exemption from Defendant's Covid-19 vaccination requirement. Employees had to submit requests by November 1, 2021.

29. Employees could request accommodation from the vaccine for religious reasons by submitting an explanation of their sincerely held religious belief and documentation from their religious leader as to the religious belief conflicting with the vaccine requirement. This explanation could be submitted either through a completed exemption form or a written explanation.

30. Defendant explained neither the review process nor the criteria for judging exemption requests to those submitting the requests.

31. Requests for reasonable accommodation to vaccination had to be submitted by November 1, 2021.

### D. Plaintiff's Accommodation Requests and Defendant's Responses

32. On October 29, 2021, Plaintiff submitted her religious exemption request to the specified mailbox.

---

[7] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws]

33. Plaintiff's exemption request detailed the reasons for her religious conflict with the Covid-19 vaccine. These reasons included both the development of the vaccines using fetal cell lines as well as the Biblical admonition to take care of her body because it is God's temple (referencing I Corinthians 3:16-17). Plaintiff stated that taking a vaccine carrying a significant risk of harm to her body conflicted with her sincerely held belief that she is called to take care of her body as God's temple. Because she believes that all life is sacred, including that of an unborn baby, these vaccines developed using fetal cell lines completely conflicted with her religious faith and belief.

34. Plaintiff received a same-day meeting invite on November 2, 2021, to a confidential exemption request discussion with HR.

35. On that same day, November 2, 2021, Plaintiff met with Amanda Herald ("HERALD") and another HR employee for the exemption request discussion. During the meeting, they asked a series of invasive questions, including whether Plaintiff had any other prior vaccines, whether she had kids and whether her kids had received vaccines. The questions were not only very intrusive and geared to intimidate but also did not seem relevant to her request for religious exemption from the vaccine. When they asked how long she had adhered to her religious beliefs, she assured them it had been for her entire life. As a number of these questions sought answers already provided in her exemption request, she pointed them to her responses in her exemption letter. When she answered by stating she had already responded in her exemption letter, they stated that it was okay if she chose "not to answer any of the questions." Neither HERALD nor the other HR employee indicated in any way that failing to respond with the requested detail would damage Plaintiff's exemption status. Instead, they assured her that she did not have to answer.

36. When tasked about prior vaccines and medications that conflicted with her religious beliefs, Plaintiff responded that she had not had any vaccines – including flu vaccines – since she

7

was able to choose (as an adult). She also stated that she does not take any prescription or over the counter medication.

37. Neither HERALD nor the other HR employee sought to discuss reasonable accommodation during the exemption request meeting on November 2, 2021.

38. Whether Plaintiff or Plaintiff's children had prior vaccines is not related to the inquiry regarding whether Plaintiff's religious beliefs are sincere or whether reasonable accommodations can be provided. The question is an interrogation tactic intended only to coerce Plaintiff to capitulate to Defendant's demands.

39. Defendant's entire process for requesting religious exemption, including same-day confidential meetings with little to no time for Plaintiff to prepare combined with the lack of information as to the form and content of discussion, was geared to intimidate and discourage Plaintiff from seeking religious exemption.

40. On November 11, 2021, Defendant emailed Plaintiff that her requested exemption and reasonable accommodation had been denied. Defendant failed to provide any explanation as to why Plaintiff's request was rejected and told Plaintiff to contact HR Home for questions or to provide additional information in support of her request. Again, Defendant made no attempt to interact with Plaintiff regarding reasonable accommodations.

41. Upon information and belief, sometime between mid-November to early December and prior to Plaintiff's termination, HR directed Plaintiff's manager to ask her to write a resignation letter so they could fill her position, and Plaintiff refused.

42. On December 1, 2021, Plaintiff received her final HR Workday notice that she had to either report her vaccination or follow the transition summary.

43. On December 13, 2021, Plaintiff received email instructions with instructions to comply with the Mandatory Vaccination Policy or turn in all her equipment by 5 P.M. on December 15, 2021 for a work location in Orrville.

44. On December 15, Plaintiff emailed the Hardware Reclamation Team, copying her manager, and requested a FedEx box for the equipment return.

45. Plaintiff was terminated effective December 16, 2021.

### E. EEOC filing and Plaintiff's right to sue

46. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") raising the issues in this Complaint.

47. The EEOC issued Plaintiff a Notice of Right to Sue on October 14, 2022.

### COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination-Failure to Accommodate

48. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

49. Plaintiff holds sincere religious beliefs that preclude her from receiving a COVID 19 vaccine.

50. Plaintiff informed Defendant of those beliefs and requested accommodation from the vaccine on religious grounds.

51. Defendant failed to engage in an interactive process with Plaintiff regarding her request for religious accommodation. Defendant responded to Plaintiff's accommodation request with a blanket denial and did not provide any reason or rationale for the denial. Further, Defendant did not explore any form of reasonable accommodation recommended under EEOC guidelines such as remote work even though Plaintiff had successfully worked from home throughout the

pandemic, Defendant had a WFH policy in place at the time, and other employees in Plaintiff's department were working from home as an accommodation to the vaccine.

52. Defendant failed to provide Plaintiff with reasonable accommodations for her sincerely held religious beliefs.

53. Defendant discriminated against Plaintiff because of her religious beliefs.

54. Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

55. By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

## COUNT II
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination-Retaliation

56. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

57. Plaintiff engaged in protected activity when she requested religious accommodations from Defendant's vaccine mandate.

58. Defendant responded with a blanket denial of Plaintiff's request for religious accommodations.

59. Defendant did not provide for appeal.

60. Defendant responded to Plaintiff's protected activity by giving Plaintiff the false choice between vaccination and effective termination.

61. Plaintiff's religious beliefs and protected activity were the causes of Defendant's adverse employment action. Defendant did not bother engaging in an interactive process with Plaintiff because Defendant never intended to provide accommodations even if it conflicted with Plaintiff's sincerely held religious beliefs. Defendant's disregard and disparate treatment of religious

accommodation requests for exemption from Covid-19 vaccination confirms Defendant's hostility to requests for religious accommodation.

62. Defendant retaliated against Plaintiff's protected activity by terminating Plaintiff's employment.

63. By retaliating against Plaintiff for engaging in protected activity, Defendant violated Title VII. This violation harmed and continues to harm Plaintiff.

## COUNT III
## Violation of R.C. § 4112.02
## Religious Discrimination in Employment

64. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

65. Ohio Revised Code Section 4112.02 prohibits employment discrimination based on religion.

66. Defendant violated Ohio's Anti-Discrimination law when it terminated Plaintiff due to her religious objections to the Covid-19 vaccine.

67. Defendant has reasonable alternatives available that could have been offered to accommodate Plaintiff's religious beliefs, but Defendant refused Plaintiff those accommodations.

68. Defendant discriminated against Plaintiff because of her religion.

69. Defendant's failure to provide reasonable accommodations harmed and continues to harm Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court award her:

a. Damages including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

b. Injunctive relief.

c. Reasonable attorneys' fees and costs.

d. Any other relief that the Court considers just, proper, and equitable.

Respectfully submitted,

**MENDENHALL LAW GROUP**

/s/ Warner Mendenhall
Warner Mendenhall (0070165)
Brian Unger (096884)
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160; f 330.762.9743
warner@warnermendenhall.com
brian@warnermendenhall.com

*Attorneys for Plaintiff*

## JURY DEMAND

A trial by jury is demanded for all issues so triable.

Respectfully Submitted,

/s/ Warner Mendenhall
Warner Mendenhall (0070165)